124 T.C. No. 5

UNITED STATES TAX COURT

WILLIAM J. MCCORKLE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1433-03L.              Filed February 24, 2005.

R's Appeals Office determined that R was warranted in filing a notice of Federal tax lien (NFTL) against P with respect to his 1996 Federal income tax liability. P assigns error on the grounds that R erroneously refunded his $2 million remittance for 1996 to the U.S. Marshals Service pursuant to a forfeiture order issued under 18 U.S.C. sec. 982 (2000) by the District Court in an unrelated, non-tax criminal case. R and P have both moved for summary judgment.

1. <u>Held</u>: R was dutybound to comply with the forfeiture order, which is not subject to collateral attack in this court.

2. <u>Held</u>, <u>further</u>, R had no duty to defend against the forfeiture order.

3. <u>Held</u>, <u>further</u>, the Appeals Office did not err in determining that R was warranted in filing the NFTL; therefore, R's motion for summary judgment will be granted and P's will be denied.

William J. McCorkle, pro se.

Pamela L. Mable, for respondent.


OPINION

HALPERN, Judge: This case is before the Court to review a determination made by respondent's Appeals Office (Appeals) that respondent was warranted in filing a notice of Federal tax lien (the notice of Federal tax lien or NFTL) against petitioner with respect to his Federal income tax liability for 1996 (1996 tax liability). We review that determination pursuant to sections 6320(c) and 6330(d)(1).[1] Petitioner assigns error to Appeals' determination on the grounds that Appeals erred in determining that a $2 million remittance made by petitioner to the Internal Revenue Service (IRS) on or about May 16, 1997 (the $2 million remittance), did not satisfy the 1996 tax liability. Appeals determined that the $2 million remittance did not satisfy the 1996 tax liability because that amount had been refunded to the U.S. Marshals Service (Marshals Service) pursuant to an order of the court in a non-tax criminal case involving petitioner. The order specified that the $2 million was subject to criminal forfeiture pursuant to 18 U.S.C. sec. 982 (2000). There being little dispute as to the underlying facts, the parties have each

_____

[1] Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986, as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

moved for summary judgment (together, the motions).

Rule 121 provides for summary judgment. Summary judgment may be granted with respect to all or any part of the legal issues in controversy "if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law." Rule 121(a) and (b).

We are satisfied that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law. For the reasons that follow, we shall grant respondent's motion for summary judgment and deny petitioner's.

## Background

### Introduction

We draw the following facts from the pleadings, requests for admissions (together with any objections or responses thereto), the motions, memoranda in support of the motions, responses to the motions, other documents filed with the Court, and reports of the Court of Appeals for the Eleventh Circuit concerning criminal proceedings involving petitioner and others; viz United States v. McCorkle, 321 F.3d 1292 (11th Cir. 2003), and United States v. Venske, 296 F.3d 1284 (11th Cir. 2002). Principally, we rely on the Statement of the Facts contained in respondent's Memorandum

of Authorities in Support of Respondent's Cross-Motion for Summary Judgment and Response to Petitioner's Motion for Summary Judgment. Respondent describes the facts so stated as being undisputed, and it appears that petitioner agrees.[2] For purposes of disposing of the motions, we find the following facts to be true.[3]

## Residence

At the time the petition was filed, petitioner was an inmate at the Federal Correctional Institution, Jesup, Georgia.

## The $2 Million Remittance

Petitioner failed to file an income tax return for 1996, although he requested (the request) and received an extension of time, until August 15, 1997, to do so. No payment of tax accompanied the request, and the request recites that no income tax is owed for 1996. When, subsequently, petitioner made the $2 million remittance (on or about May 16, 1997), he indicated that it was for his 1996 tax year, and respondent applied it to petitioner's account for 1996. The $2 million remittance was not accompanied by a tax return. Petitioner made the $2 million

---

[2] In Petitioner's Response in Opposition to Respondent's Cross-Motion for Summary Judgment and Response to Petitioner's Motion for Summary Judgment, petitioner describes respondent's statement of facts as being merely incomplete: "Not all of the undisputed facts are set forth in Respondent's Memorandum of authorities".

[3] All dollar amounts have been rounded to the nearest dollar.

remittance on or about May 9, 1997, shortly after Federal agents had seized petitioner's property and documents.

The Criminal Case

Petitioner was one of several defendants in the multicount criminal case styled United States v. McCorkle, Criminal Docket No. 98-CR-52-All (M.D. Fla.) (sometimes, the criminal case). On March 19, 1998, a superseding indictment was brought against petitioner (among others), which included numerous counts involving fraud and money laundering. The money-laundering counts were brought pursuant to 18 U.S.C. secs. 1956 and 1957, and the superseding indictment charged that petitioner had laundered and conspired to launder telemarketing fraud proceeds from July 26, 1996, through July 2, 1997.

The superseding indictment also contained a forfeiture count alleging that any proceeds that petitioner obtained from fraud and money laundering were forfeitable to the United States pursuant to 18 U.S.C. sec. 982(a)(1). Petitioner and his wife had deposited $7 million in laundered proceeds into the Royal Bank of Canada Trust Company, in the Cayman Islands. Of that $7 million, $2 million was used to make the $2 million remittance, and $2 million was transferred to a legal trust fund established to pay the legal fees of petitioner's (and his wife's) criminal defense attorneys, including F. Lee Bailey, which $2 million was later transferred by Mr. Bailey to himself and others.

On November 4, 1998, a jury convicted petitioner (among others) of executing a telemarketing scheme in violation of 18 U.S.C. secs. 1341 (mail fraud) and 1343 (wire fraud), of conspiring to launder the proceeds of the scheme in violation of 18 U.S.C. sec. 1956(h), and of laundering those proceeds in violation of 18 U.S.C. secs. 1956(a)(2)(B) and 1957(a).  On November 5, 1998, the United States District Court for the Middle District of Florida (the District Court) submitted the criminal forfeiture count to the jury, which returned a special verdict finding that certain real and personal property, including numerous bank accounts, was subject to forfeiture.  As part of its determination, the jury concluded that, because it was traceable to petitioner's criminal acts, the $2 million remittance was subject to forfeiture.  The jury also concluded that the $2 million petitioner had transferred to the legal trust fund established to pay his criminal attorneys, including Mr. Bailey, was forfeitable, since it was also traceable to petitioner's criminal acts.  On December 16, 1998, pursuant to the jury's determination on the forfeiture count, the District Court entered a forfeiture order (the forfeiture order), requiring forfeiture of, among other things, the $2 million remittance.

Petitioner was sentenced on January 25, 1999.  Petitioner appealed his conviction and sentence to the Court of Appeals for

the Eleventh Circuit, which affirmed the conviction but vacated petitioner's sentence and remanded the case to the District Court for resentencing. See United States v. Venske, 296 F.3d 1284 (11th Cir. 2002).[4] The Court of Appeals left intact the forfeiture aspects of the case. United States v. McCorkle, 321 F.3d at 1294 n.1.

Pursuant to the forfeiture order, on or about February 1, 1999, the Marshals Service sought to recover from respondent the $2 million remittance. On or about February 18, 1999, respondent complied with the forfeiture order and returned $2 million to the Marshals Service by making a manual refund and issuing a check made payable to the Marshals Service (the refund).

Respondent's Examination

In 1999, after petitioner's conviction for the offenses described above, respondent commenced an examination of petitioner's Federal income tax liability for 1996. That examination resulted in the issuance of a notice of deficiency for 1996, determining a deficiency in tax of $905,315 and various additions to tax and penalties. Petitioner did not petition the Tax Court with respect to the notice of deficiency. On October

_____

[4] After remand, the District Court conducted another sentencing hearing on Sept. 11, 2003, and made certain findings. The District Court then adopted and imposed its original sentence against petitioner. Petitioner has appealed his resentencing to the Court of Appeals for the Eleventh Circuit, which appeal is pending.

9, 2000, respondent assessed an income tax deficiency of $905,315, an estimated tax penalty of $48,186, a miscellaneous penalty of $656,353, a failure to pay penalty of $9,053, and interest of $234,073.

Notice of Federal Tax Lien

On or about April 18, 2002, respondent filed the notice of Federal tax lien with the County Comptroller of Orange County, Florida, showing "Unpaid Balance of Assessment" for 1996 in the amount of $1,852,980.  On April 24, 2002, respondent issued to petitioner Letter 3172, Notice of Federal Tax Lien Filing and Your Right to a Hearing Under I.R.C. 6320.

Collection Due Process Hearing

On May 3, 2002, petitioner timely requested a hearing under section 6320 (collection due process hearing).  In that request, petitioner opposed the filing of the NFTL and noted the $2 million remittance, which, he argued, had satisfied his 1996 tax liability.  Because petitioner was incarcerated, the Appeals Office accorded petitioner the collection due process hearing by way of an exchange of correspondence.  During the course of the hearing, a settlement officer conducting the hearing for the Appeals Office learned of the forfeiture order and respondent's disposition of the $2 million remittance.

On January 10, 2003, the Appeals Office sent to petitioner a Notice of Determination Concerning Collection Action(s) Under

Section 6320 and/or 6330 (notice of determination) denying petitioner any relief. The notice of determination contained a summary of the Appeals Office's determination, which was further detailed in an attachment authored by the settlement officer. In support of sustaining the filing of the NFTL, the settlement officer determined that the $2 million remittance had been subject to a criminal forfeiture proceeding and that petitioner was not entitled to rely on those funds to satisfy the 1996 tax liability. The settlement officer also determined that the filing of the NFTL was appropriate and no circumstances existed to either release or withdraw it. He further determined that petitioner had admitted to his inability to pay the liability, but petitioner had failed to request any collection alternatives or to provide any information from which collection alternatives could be considered. The settlement officer sustained the filing of the NFTL.

The Amended Petition

Petitioner filed a petition and an amended petition. In the amended petition, petitioner states that, for 1996: "[He] paid $2,000,000.00 estimated tax payment to the IRS, but never did actually file a return." He adds: "The Department of the Treasury in a manual refund check refunded this $2,000,000.00 to the U.S. Marshall's service pursuant to a court order for forfeiture." He claims: "This refund based upon the court order

of forfeiture is in error." He explains: "At the time of payment of the $2,000,000.00[,] no forfeiture order was in place by the U.S. Courts." Therefore, he concludes, no tax lien is appropriate, since, once he paid his tax for 1996, the IRS was without authority to "unpay" it and demand that he pay it again.

## Discussion

### I. Law

#### A. Collection Procedure

Section 6321 imposes a lien for unpaid Federal taxes. Section 6323 provides that the lien imposed by section 6321 is not valid against certain persons until notice of the lien (the NFTL) is filed in accordance with rules provided. Section 6320(a) provides that, after the Commissioner has filed the NFTL, the Commissioner must notify the taxpayer of the fact of the filing and, among other things, the taxpayer's right to request a hearing. If the taxpayer requests a hearing, the hearing is to be conducted by Appeals, and the Appeals officer conducting the hearing must verify that the requirements of any applicable law or administrative procedure have been met. Secs. 6320(c), 6330(c)(1). The taxpayer requesting the hearing may raise "any relevant issue" relating to the unpaid tax or the Commissioner's collection action. Sec. 6330(c)(2)(A). The taxpayer "may also raise at the hearing challenges to the existence or amount of the underlying tax liability" if the taxpayer did not receive any

statutory notice of deficiency for, or did not otherwise have an opportunity to dispute, such tax liability.  Sec. 6330(c)(2)(B).

Following the hearing, the Appeals officer must determine whether the collection action is to proceed, taking into account the verification the Appeals officer has made, the issues raised by the taxpayer at the hearing, and whether the collection action "balances the need for the efficient collection of taxes with the legitimate concern of the * * * [taxpayer] that any collection action be no more intrusive than necessary."  Sec. 6330(c)(3)(C). We have jurisdiction to review such determinations where we have jurisdiction over the type of tax involved in the case.  Sec. 6330(d)(1)(A); see Iannone v. Commissioner, 122 T.C. 287, 290 (2004).  Where the underlying tax liability is properly at issue, the taxpayer is entitled to a de novo hearing in this court. E.g., Goza v. Commissioner, 114 T.C. 176, 181-182 (2000).  Where the underlying tax liability is not properly at issue, we review the determination for abuse of discretion.  Id. at 182.  When faced with questions of law, as we are here (determining whether petitioner may challenge the forfeiture order and whether respondent was obligated to defend against it), the standard of review makes no difference.  Whether characterized as a review for abuse of discretion or as a consideration "de novo" (of a question of law), we must reject erroneous views of the law.  See Cooter & Gell v. Hartmarx Corp., 496 U.S. 384 (1990); Abrams v.

Interco, Inc., 719 F.2d 23, 28 (2d Cir. 1983) (stating that it is not inconsistent with the discretion standard for an appellate court to decline to honor a purported exercise of discretion which was infected by an error of law); Swanson v. Commissioner, 121 T.C. 111, 119 (2003).

B.  Criminal Forfeiture

Title 18 U.S.C. sec. 982, is entitled "Criminal forfeiture", and it governs forfeiture in cases involving convictions for money laundering.  In pertinent part, 18 U.S.C. sec. 982(a)(1) provides:

Sec. 982  Criminal Forfeiture.

(a)(1) The court, in imposing sentence on a person convicted of an offense in violation of * * * [18 U.S.C. secs. 1956 or 1957] shall order that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property.

The seizure of property forfeited under 18 U.S.C. sec. 982(a)(1) and any judicial proceeding relating to the forfeiture are governed by 21 U.S.C. sec. 853 (2000) (except subsection (d) thereof).  18 U.S.C. sec. 982(b)(1).  Title 21, U.S.C. sec. 853(c), addresses third party transfers and provides as follows:

Sec. 853(c).  Third party transfers.

All right, title, and interest in property described in * * * [18 U.S.C. sec. 982] vests in the United States upon the commission of the act giving rise to forfeiture under * * * [18 U.S.C. sec. 982]. Any such property that is subsequently transferred to a person other than the defendant may be the subject of a special verdict of forfeiture and thereafter shall be

ordered forfeited to the United States, unless the transferee establishes in a hearing pursuant to subsection (n) of this section that he is a bona fide purchaser for value of such property who at the time of purchase was reasonably without cause to believe that the property was subject to forfeiture under this section.

Title 21 U.S.C. sec. 853(n)(1), provides that, following the entry of an order of forfeiture, the United States shall give notice of the order, and section 853(n)(2) thereof provides that any person, "other than the defendant", asserting a legal interest in the property ordered to be forfeited, has 30 days to petition the court for a hearing to adjudicate the validity of his alleged interest.  Following the District Court's disposition of any petitions filed under 21 U.S.C. sec. 853(n)(2), or, if none are filed, after the close of the period for filing such petitions, 21 U.S.C. sec. 853(n)(7) provides "the United States shall have clear title to property that is the subject of the order of forfeiture and may warrant good title to any subsequent purchaser or transferee."

## II.  Arguments of the Parties

The essence of petitioner's argument is that he satisfied the 1996 tax liability with the $2 million remittance before he forfeited to the United States his ownership rights in the laundered funds (the source of the $2 million remittance). Petitioner believes that the rights of the United States under the forfeiture statute did not ripen until (1) he was convicted,

(2) the jury rendered a special verdict of forfeiture, and (3) the District Court entered the forfeiture order. Moreover, petitioner argues that, since respondent was a bona fide purchaser for value reasonably without cause to believe the $2 million remittance was subject to forfeiture, he could have defended against the forfeiture order and, because he failed to do so, should be barred from trying to collect the 1996 tax liability.

Respondent counters that, on account of his criminal conviction, petitioner cannot challenge the validity of the forfeiture order or respondent's compliance with it. Respondent also argues that, since, at the time he received notice of the forfeiture order, he had not assessed petitioner's 1996 income tax liability, he had no standing to make a claim as a bona fide purchaser for value.

III. Analysis

A. Introduction

The jury in the criminal case returned a special verdict of forfeiture with respect to the $2 million remittance. In returning the special verdict, the jury necessarily found that petitioner had transferred $2 million of laundered proceeds to the IRS. Cf. United States v. McCorkle, 321 F.3d at 1294 n.2. Thereafter, the District Court entered the forfeiture order, the United States presumably notified respondent of the order, and,

since respondent failed to petition the court for a hearing to adjudicate his rights in the laundered proceeds, the United States gained clear title to the $2 million remittance, which the Marshals Service collected.  See 21 U.S.C. sec. 853(c), (n)(1), (2), (7).  The forfeiture order has neither been vacated by the District Court, nor has the court's decision to issue it been reversed.  Therefore, respondent, like this court, must respect it.  Moreover, respondent had no duty to challenge it.

B.  <u>Petitioner Cannot Challenge the Forfeiture Order</u>

Petitioner errs in his understanding of that portion of 21 U.S.C. sec. 853(c) that embodies what is known as the "relation-back doctrine", according to which title of the United States to forfeited property "relates back" to the time of commission of the illegal act underlying the forfeiture.  In pertinent part, 21 U.S.C. sec. 853(c) provides:  "All right, title, and interest in [the forfeited] property * * * vests in the United States upon the commission of the act giving rise to forfeiture".  Contrary to petitioner's belief, therefore, the date on which the District Court orders the forfeiture is not the date on which the rights of the United States arise.  It is true that, until the order of forfeiture is entered, the United States has no right to seize the forfeited property, see 21 U.S.C. sec. 853(g), but, upon entry of the order, the forfeiture relates back to the date of the criminal act giving rise to the forfeiture.  See, e.g.,

Caplin & Drysdale v. United States, 491 U.S. 617, 627 (1989). Neither petitioner's nor our understanding of 21 U.S.C. sec. 853(c) is of moment, however, since we, as well as respondent, must respect the forfeiture order and have no warrant to reject it. The rule is clear: "[I]t is for the court of first instance to determine the question of the validity of the law, and until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decision are to be respected." Celotex Corp. v. Edwards, 514 U.S. 300, 313 (1995) (quotation marks and citation omitted).

When, on or about February 18, 1999, respondent complied with the forfeiture order, the order had neither been vacated nor had the decision to issue it been reversed. Barring his challenging the order under 21 U.S.C. sec. 853(c), respondent was dutybound to comply. Since he did not challenge it, and was under no obligation to do so (see infra), he committed no error in complying with the order. Subsequently, the Court of Appeals for the Eleventh Circuit vacated petitioner's sentence and remanded the case for resentencing but left the forfeiture order intact, and the forfeiture order is not subject to collateral attack in this court. See Celotex Corp. v. Edwards, supra. We fail to see how Appeals abused its discretion in determining not to give petitioner credit for funds received from petitioner (the $2 million remittance) that respondent was forced to disgorge to

the Marshals Service pursuant to an order that he was bound to obey.

C. Respondent's Failure To Defend Against the Forfeiture Order

Petitioner concedes that respondent failed to defend against the forfeiture order pursuant to a hearing authorized by 21 U.S.C. sec. 853(n)(2). Nevertheless, petitioner argues that, when respondent received the $2 million remittance, respondent was reasonably without cause to believe that the remittance was subject to forfeiture. Therefore, petitioner continues, since the remittance was received in payment of petitioner's tax debt, respondent could have successfully defended against the forfeiture order as a bona fide purchaser for value. See 21 U.S.C. sec. 853(c), (n)(6)(B).[5] Because respondent remained silent when he could have spoken up, petitioner argues that respondent should be barred from collecting the 1996 tax liability (in petitioner's words, "a second time"). Respondent answers that he could not have defended against the forfeiture order since, when he received notice of it, he was without standing to make a claim as a third party with a legal interest

_____

[5] We note that this argument implicitly acknowledges the relation-back doctrine, since it assumes a transfer of property to a third party after ownership of the property vests in the United States. See 21 U.S.C. sec. 853(c).

in the $2 million remittance.[6]

We need not decide whether respondent had standing to make a claim pursuant to 21 U.S.C. sec. 853(c), (n)(6)(B). Neither need we decide whether a person receiving a payment in discharge of a liability qualifies as a "purchaser" within the meaning of 21 U.S.C. sec. 853(c), (n)(6)(B).[7] We need not decide those questions because, even if we were to answer both questions in the affirmative, petitioner cannot show that respondent was

---

[6] Respondent claims that, in order for a tax debt to arise to permit him to have any rights against the taxpayer and the taxpayer's property, he must first make an assessment of the tax and then make a demand for payment. In support of that claim, respondent points to secs. 6201 through 6203, 6321, 6322; secs. 301.6201-1 and 301.6203-1, Proced. & Admin. Regs.; and Capuano v. United States, 955 F.2d 1427, 1432 (11th Cir. 1992). Here, respondent states, assessment and demand followed by more than a year his compliance with the forfeiture order. Petitioner's position is that, pursuant to sec. 6151, his tax debt for 1996 arose on Apr. 15, 1997, when payment thereof was due.

[7] It is not settled whether, in using the term "bona fide purchaser for value" in 21 U.S.C. secs. 853(c) and (n)(6)(B) (emphasis added), Congress intended the term "purchaser" to operate as a limitation on the class of persons that, having engaged in arm's-length transactions with the defendant, is entitled to protection of its interests. The Court of Appeals for the Fourth Circuit has determined that Congress did not intend such a limitation. United States v. Reckmeyer, 836 F.2d 200, 208 (4th Cir. 1987) ("If the term 'purchaser' were so construed, a car dealer who sold a car to a later convicted defendant without knowledge of the potential forfeitability of the defendant's assets could have the payment he received for the car forfeited while a person who purchased otherwise forfeitable stock from the defendant would be protected."). Other Courts of Appeals have not interpreted 21 U.S.C. sec. 853(c)(6)(B) so liberally. See, e.g., United States v. BCCI Holdings (Luxembourg), S.A., 46 F.3d 1185, 1191-1192 (D.C. Cir. 1995). We shall await an appropriate opportunity to address the issue.

obligated to defend against the forfeiture order, and he has failed to show the elements necessary to raise successfully equitable estoppel as a defense to respondent's efforts to collect the 1996 tax liability.

Title 21, U.S.C. sec. 853(n)(2), provides that any person, "other than the defendant," asserting a legal interest in property that has been ordered forfeited "may" petition the District Court for a hearing to adjudicate the validity of his alleged interest in the property. A third party, therefore, has a right, not a duty, to petition the District Court,[8] and it is his interest, not the defendant's, that is to be determined. Indeed, the defendant has no interest in the forfeited property and is prohibited even from petitioning the court. Petitioner has failed to suggest any other statutory provision that would obligate respondent to defend against the forfeiture order and makes no claim that respondent was under a contractual obligation to do so. Therefore, we find that respondent had no duty to defend against the forfeiture order.

Equitable estoppel is a judicial doctrine that precludes a party from denying that party's own acts or representations that induce another to act to his or her detriment. E.g., Graff v.

---

[8] Nor has the Internal Revenue Service a duty to collect a tax assessment from specific property in which it has a lien rather than permitting the property to be forfeited. Raulerson v. United States, 786 F.2d 1090, 1092-1093 (11th Cir. 1986).

Commissioner, 74 T.C. 743, 761 (1980), affd. 673 F.2d 784 (5th Cir. 1982). It is to be applied against the Commissioner only with utmost caution and restraint. E.g., Hofstetter v. Commissioner, 98 T.C. 695, 700 (1992). The essential elements of estoppel are: (1) There must be a false representation or wrongful misleading silence; (2) the error must be in a statement of fact and not in an opinion or a statement of law; (3) the person claiming the benefits of estoppel must be ignorant of the true facts; and (4) he must be adversely affected by the acts or statements of the person against whom estoppel is claimed. E.g., Estate of Emerson v. Commissioner, 67 T.C. 612, 617-618 (1977); see also Tefel v. Reno, 180 F.3d 1286, 1302 (11th Cir. 1999). "Where an allegation of estoppel raises factual questions on which reasonable minds might disagree, the questions must be resolved at trial by the trier of fact. * * * However, where the facts are not in dispute or are beyond dispute, the existence of estoppel is a question of law." J.C. Wyckoff & Associates v. Standard Fire Ins. Co., 936 F.2d 1474, 1493 (6th Cir. 1991). See generally 28 Am. Jur. 2d, Estoppel and Waiver, sec. 188 (2000). Since there is no dispute here as to the relevant facts, we treat petitioner's claim of estoppel as raising only a question of law, which we may dispose of with only brief discussion.

Respondent made no false statement to petitioner, nor did respondent's silence (if we can call his failure to petition

silence) mislead petitioner.  Moreover, petitioner was not ignorant of the forfeiture order, and petitioner has failed to show that respondent had any duty to assist petitioner in mitigating his losses with respect to his criminal offenses. These are critical defects in petitioner's estoppel defense.

Respondent's failure to petition the District Court does not bar him from collecting the 1996 tax liability.

IV. Conclusion

We have concluded that, to the extent petitioner's claim constitutes a collateral attack on the forfeiture order, it must be denied, and, further, respondent is not barred from collecting the 1996 tax liability on account of his failure to petition the District Court.  Appeals did not err in determining that respondent was warranted in filing the notice of Federal tax lien.  Therefore, as stated, respondent, not petitioner, is entitled to summary judgment in his favor.

To reflect the foregoing,

An appropriate order and decision granting respondent's motion for summary judgment, denying petitioner's, and deciding for respondent will be entered.