T.C. Memo. 2007-59

UNITED STATES TAX COURT

RALPH TASHJIAN, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 14111-05L.          Filed March 12, 2007.

Patrick J. Quinn and Bernard P. Kenneally, for petitioner.

Catherine G. Chang, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COHEN, Judge: The petition in this case was filed in response to a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 (notice of determination). After concessions by the parties, the issues for decision are:

(1) Whether petitioner's arguments that (a) Synergistics/Blueprint Software (Synergistics), Lumenetics, and Data Flex partnerships were not properly subjected to the unified audit and litigation procedures of sections 6221 through 6234 (hereinafter referred to as TEFRA procedures), for taxable years 1982, 1983, and 1984, and (b) Dennis R. DiRicco (DiRicco) was ineligible to serve as tax matters partner (TMP) of the partnerships may be considered in this case;

(2) if so, whether respondent's Appeals officer properly determined, during the section 6330 hearing (hearing), that petitioner was precluded by section 6330(c)(2)(B) from challenging the use of TEFRA audit procedures in the previous cases;

(3) whether respondent's criminal investigation of petitioner converted the partnership items on his tax returns to nonpartnership items in 1982, 1983, and 1984;

(4) whether petitioner was denied due process by being unable to access records allegedly held by respondent; and, ultimately,

(5) whether there was an abuse of discretion by the Appeals officer of the Internal Revenue Service (IRS) in determining that collection of petitioner's unpaid income tax liabilities for 1982, 1983, and 1984 should proceed.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts have been stipulated, and the stipulated facts are incorporated in our findings by this reference. Petitioner resided in San Francisco, California, at the time that he filed his petition.

The Synergistics, Lumenetics, and Data Flex Partnerships

Beginning in 1980 to the present, petitioner has been in the record promotion business working for various record companies. During the 1980s, he was employed by Joseph Isgro (Isgro).

While working for Isgro, petitioner was introduced to Isgro's tax attorney, DiRicco. Through DiRicco, petitioner became involved in a number of partnerships.

In 1982 petitioner was a limited partner in Synergistics. Synergistics recorded its Certificate of Limited Partnership on October 13, 1983, in San Mateo County, California. An amendment to the Certificate of Limited Partnership was recorded on November 10, 1983. Petitioner and his wife at the time, Valerie A. Tashjian (Mrs. Tashjian), made a $60,000 capital contribution to Synergistics at the time that it was formed. The Certificate of Limited Partnership lists petitioner as a limited partner and

shows DiRicco as the general partner.  DiRicco signed the certificate on behalf of petitioner and the other limited partners as "Attorney in Fact".  On his Form 1040, U.S. Individual Income Tax Return, for 1982, petitioner deducted $55,122 as a loss attributable to Synergistics.

In 1983 petitioner was a limited partner in Lumenetics. Lumenetics recorded its Certificate of Limited Partnership on January 12, 1984, in San Mateo County.  The certificate lists petitioner as a limited partner and shows Robert Steinjann (Steinjann) as the general partner.  The certificate shows that petitioner and Mrs. Tashjian made a $35,000 cash capital contribution with a $70,000 note and had a 3.0702-percent interest in the partnership.  There is no signature by, or on behalf of, petitioner or Mrs. Tashjian in the certificate.  On his Form 1040 for 1983, petitioner deducted losses attributable to Lumenetics.  However, the amount of the deduction claimed is unknown because neither party has a copy of the tax return that was filed for that year.  On his Form 1040 for 1984, petitioner deducted $277 attributable to Lumenetics and $361 attributable to Synergistics.

In 1984 petitioner was a limited partner in Data Flex.  Data Flex recorded its Certificate of Limited Partnership on July 3, 1984, in the office of the secretary of state of the State of California.  The certificate shows Steinjann as the general

partner.  On his Form 1040 for 1984, petitioner deducted $141,233 attributable to Data Flex.

The principal place of business for each of the partnerships was DiRicco's office in San Mateo, California.  DiRicco formed, organized, promoted, and served as the TMP for Synergistics, Lumenetics, and Data Flex.

Synergistics filed a tax return for 1982, which was processed by the IRS on or about October 19, 1983.  Synergistics was audited for 1982 under the TEFRA audit procedures.  A waiver had been signed extending the period of limitations for assessment of Synergistics to August 4, 1996.  Lumenetics filed a tax return for 1983.  Lumenetics was audited for 1983 under the TEFRA audit procedures.  Data Flex filed a tax return for 1984.  Data Flex was audited for 1984 under the TEFRA audit procedures.

By notice of final partnership administrative adjustment (FPAA) mailed to the TMP, dated October 1, 1987, respondent disallowed a deduction that was reported on the Lumenetics 1983 tax return as "marketing expenses".  In response to the FPAA, DiRicco filed a petition with the Court on January 4, 1988, at docket No. 114-88.  DiRicco also filed petitions with the Court for Synergistics and Data Flex at docket Nos. 24781-87 and 20257-90, respectively.  DiRicco stipulated, on behalf of Synergistics and Data Flex, that certain TEFRA issues in their

own cases before the Court would be bound by the Court's findings and decision in the Lumenetics case.

On September 20, 1989, DiRicco pleaded guilty to, and was convicted of, violating section 7206(2) for aiding and assisting in the preparation of false tax returns for two of the limited partners in the Lumenetics partnership. DiRicco was declared ineligible to practice law in the State of California on March 7, 1989, and resigned from the bar on July 7, 1989. He was also disbarred from the U.S. Supreme Court bar. DiRicco, as TMP for Lumenetics, continued to represent the partnership, pro se, in the Tax Court litigation. The case was tried on January 28, 1991. In Lumenetics v. Commissioner, T.C. Memo. 1992-630, the Court found that (1) Lumenetics failed to meet its burden of proving that the partnership was entitled to the deduction for "marketing expenses" and (2) Lumenetics failed to prove that respondent was barred by the statute of limitations from assessing taxes for 1983 against the Lumenetics partners with respect to partnership items.

The opinion in Lumenetics v. Commissioner, T.C. Memo. 1992-630 n.4, stated, inter alia:

> When the original agreement was allegedly executed in October of 1983, Lumenetics was not even organized under the laws of the State of California. Lumenetics' private placement memorandum is dated Oct. 1, 1983, and its certificate of limited partnership * * * is dated Jan. 11, 1984. * * * none of the alleged investors in Lumenetics actually executed the certificate of limited partnership. Instead, * * * Steinjann, Lumenetics' general partner and Mr. DiRicco's neighbor, executed

the certificate of limited partnership apparently on behalf of the limited partners. [Citations omitted.]

On November 19, 1992, Lumenetics moved to vacate the Court's decision. On November 23, 1992, that motion was denied.

On June 24, 1993, Tasha Corp. (Tasha), a limited partner of Lumenetics, filed a Notice of Election to Participate in the Lumenetics case. Tasha then filed its own motion to vacate the Lumenetics decision, arguing that DiRicco was ineligible to serve as TMP of Lumenetics during the Court proceedings because of his prior felony tax convictions and that DiRicco had conflicts of interest that should have disqualified him from acting as TMP in the Lumenetics case. On May 5, 1995, the Court denied the motion to vacate the Lumenetics decision.

On June 5, 1995, Tasha filed a Notice of Appeal of the Tax Court's denial of its motion to vacate the Lumenetics decision to the U.S. Court of Appeals for the Ninth Circuit. On August 9, 1996, the U.S. Court of Appeals for the Ninth Circuit granted a motion by Tasha for voluntary dismissal of the Notice of Appeal.

Criminal Investigation of Petitioner

During the 1980s when petitioner was employed by Isgro, Isgro and other promoters in the record industry were the subject of a Federal strike force investigation for involvement in "payola" (the payment of cash or gifts in exchange for airplay of songs), money laundering, and other criminal activity involving the record business. In or about November 1986, the IRS began a

criminal investigation of petitioner for possible violation of the internal revenue laws. During the criminal investigation of petitioner, the IRS suspected that petitioner's criminal activity occurred with respect to taxable years 1983, 1984, and later years. Petitioner eventually entered into a plea agreement as a result of the investigation, and the IRS closed its investigation on February 18, 1990.

Petitioner's Income Tax and Section 6330 Proceedings

As a result of the decision in Lumenetics, the partnership losses on petitioner's returns for 1982, 1983, and 1984, as described above, were disallowed by the IRS, and deficiencies were assessed against petitioner and Mrs. Tashjian. On July 19, 1993, the IRS assessed an individual income tax liability against petitioner in the amount of $29,565 for 1983 relating to Lumenetics. Additionally, on June 4, 1996, the IRS sent to petitioner a Form 4549A-CG, Income Tax Examination Changes, explaining how disallowances made during the TEFRA examinations of Synergistics for 1982 and Data Flex for 1984 affected his tax returns for those years. On August 5, 1996, the IRS assessed income tax liabilities against petitioner in the amounts of $15,116 and $44,666 for 1982 and 1984, respectively.

A Final Notice, Notice of Intent to Levy and Notice of Your Right to a Hearing (notice) with respect to petitioner's unpaid liabilities was mailed to petitioner on October 28, 2004. Petitioner timely requested a hearing in response to the notice.

Petitioner's hearing was conducted through face-to-face meetings and written and oral communication. The IRS sent a notice of determination to petitioner on June 21, 2005, sustaining the IRS's proposed levy with respect to petitioner's outstanding balances. The notice of determination stated:

> [W]e believe that the requirements of law and administrative procedure have been met * * * . Assessments appear correct and [sic] based on established law, policy, and procedure. Notices of assessment or proposed deficiency assessments were sent to the address of record as required by statute. * * *

> * * * * * * *

> * * * You have had previous opportunities to contest the income tax liabilities for 1982, 1983, and 1984 (which are the result of a Tax Court decision involving a partnership in which you had invested) and cannot raise that issue in the Due Process venue. * * *

> * * * * * * *

> The levy is intrusive but it is appropriate in this instance. You have made only occasional payments against these liabilities and there is no indication that the liabilities will be paid voluntarily. You have not proposed a specific alternative to collection.

                              OPINION

The Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3401, 112 Stat. 685, 746, granted the Court jurisdiction to review the Commissioner's determination as to the propriety of a filing of a notice of Federal tax lien under section 6320 or a proposed levy upon property under section 6330. Section 6330 generally provides that the IRS cannot proceed with the collection of taxes by way of a levy on a

taxpayer's property until the taxpayer has been given notice of and the opportunity for an administrative review of the proposed levy (in the form of an IRS Office of Appeals hearing). Section 6330(c)(1) provides that the Appeals officer shall obtain verification that the requirements of any applicable law or administrative procedure have been met. Section 6330(c)(2)(A) provides that the taxpayer may raise "any relevant issue relating to the unpaid tax" including spousal defenses, challenges to the appropriateness of collection actions, and alternatives to collection. The taxpayer may also raise challenges to the existence or amount of the underlying tax liability if he or she did not receive a statutory notice of deficiency with respect to the underlying tax liability or did not otherwise have an opportunity to dispute that liability. Sec. 6330(c)(2)(B).

Section 6330(c)(3) provides that the determination of the Appeals officer shall take into consideration the verification under section 6330(c)(1), the issues raised by the taxpayer, and whether the proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the taxpayer that any collection action be no more intrusive than necessary. If the taxpayer is dissatisfied with the determination made after the hearing, judicial review of the determination, such as that sought in this case, is available. See generally Goza v. Commissioner, 114 T.C. 176, 179-181 (2000).

Where the validity of the underlying tax liability is at issue, the Court will review the matter de novo. Davis v. Commissioner, 115 T.C. 35, 39 (2000). Where the taxpayer challenges the assessment procedures of the case, the Court will review the matter for abuse of discretion. Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, supra. In order to prevail under abuse of discretion, a taxpayer must prove that the Commissioner exercised this discretion arbitrarily, capriciously, or without sound basis in fact or law. Woodral v. Commissioner, 112 T.C. 19, 23 (1999).

It is unclear which position petitioner has taken. Petitioner argues:

> The TEFRA jurisdiction did not lie due to non-formation of the partnership entities according to law, failure to have a valid * * * [TMP] represent Petitioner within the scope of TEFRA legislative intent, failure of Respondent to follow TEFRA procedures in identifying and selecting a proper * * * [TMP], and failure to treat Petitioner's criminal investigation as a conversion of partnership items to non-partnership items. The combined effects of these errors caused the TEFRA assessments to be ineffective as against Petitioner. * * *

The TEFRA procedures as they relate to the partnerships and petitioner's challenge of the TMP's representation of the partnerships are discussed below.

Petitioner argues that the decision in Lumenetics v. Commissioner, T.C. Memo. 1992-630, should be void for lack of jurisdiction because: (1) The TEFRA audit procedures were inapplicable to the partnerships because they were improperly

formed under California law and/or (2) the criminal investigation of DiRicco made him a disqualified TMP and he breached his fiduciary duties as a TMP by not giving petitioner notice of the Lumenetics case.  Petitioner contends that, because the decision in Lumenetics should be void for lack of jurisdiction, the assessments against him in this case (based on partnership adjustments made by the IRS) were improper.

Rule 162 provides that a party seeking to vacate a decision must file an appropriate motion within 30 days after the decision is entered, unless the Court allows otherwise.  Whether the Court allows the filing of a motion to vacate a decision after the referenced 30-day period is generally within the sound discretion of the Court.  See Estate of Egger v. Commissioner, 92 T.C. 1079, 1083 (1989); see also Adkins v. Commissioner, T.C. Memo. 2005-260.  Even if a decision is otherwise final, the Court has jurisdiction to vacate a decision that is void; i.e., because the Court lacked jurisdiction to enter the decision in the first place.  See Billingsley v. Commissioner, 868 F.2d 1081 (9th Cir. 1989); Abeles v. Commissioner, 90 T.C. 103, 105-106 (1988); Brannon's of Shawnee, Inc. v. Commissioner, 69 T.C. 999, 1001-1002 (1978); see also Adkins v. Commissioner, supra.

Though petitioner may be allowed to raise at any time the issue of lack of subject matter jurisdiction making a decision void, he concedes that the proper course for him would have been to file a motion to vacate that decision (in Lumenetics, docket

No. 114-88) under Rule 162.  Petitioner admits in his brief that
"The proper course of action to challenge the tax and interest
assessments on the grounds raised herein would be to petition the
Tax Court for leave to file a Motion to Vacate its decision."
Adjudication of those grounds here would subject the validity of
the decision in the Lumenetics case to an impermissible
collateral attack.  Cf. Celotex Corp. v. Edwards, 514 U.S. 300,
313 (1995) (quoting Walker v. Birmingham, 388 U.S. 307, 314
(1967)); McCorkle v. Commissioner, 124 T.C. 56, 65-66 (2005);
Sennett v. Commissioner, 69 T.C. 694, 696-697 (1978); Hackworth
v. Commissioner, T.C. Memo. 2004-173.

(As indicated above, other partners in the Lumenetics
partnership attempted and failed in the Tax Court as well as in
the U.S. Court of Appeals for the Ninth Circuit to have the
decision in Lumenetics vacated.  Our statement regarding the
proper procedure for challenging the jurisdiction of the Court in
that case should not be construed as a recommendation that the
course be further pursued.)

Even if petitioner were entitled to contest the underlying
tax liability in this case, he has not shown, and apparently is
unable to show, that disallowance of the partnership losses
claimed on his individual returns for the years in issue is
erroneous.  Petitioner admitted at trial that he never had
records of income or expenses incurred by the partnerships that
were deducted on his returns.  The bottom line is that petitioner

has not substantiated the large deductions that he claimed against his other income in 1982, 1983, and 1984.

Petitioner additionally argues that the criminal investigation of petitioner caused the partnership items of petitioner in 1982, 1983, and 1984, to become nonpartnership items. Therefore, he contends that he should not be bound by the decision in Lumenetics v. Commissioner, supra, because he should not have been affected by the TEFRA procedure. The Appeals officer did not address this argument in the notice of determination, but instead grouped it with petitioner's other claims and stated that petitioner was barred from raising these issues under section 6330(c)(2)(B) because he had a previous opportunity to do so.

Partnership items of a partner for a partnership taxable year become nonpartnership items as of the date the IRS mails to such partner a notice that such items shall be treated as nonpartnership items. Sec. 6231(b)(1)(A). One circumstance under which this could happen is when the taxpayer is under criminal investigation. Sec. 6231(c)(1)(B). Section 301.6231(c)-5T, Temporary Proced. & Admin. Regs., 52 Fed. Reg. 6793 (Mar. 5, 1987), states:

> The treatment of items as partnership items with respect to a partner under criminal investigation for violation of the internal revenue laws relating to income tax will interfere with the effective and efficient enforcement of the internal revenue laws. Accordingly, partnership items of such a partner arising in any partnership taxable year ending on or

before the last day of the latest taxable year of the partner to which the criminal investigation relates shall be treated as nonpartnership items as of the date on which the partner is notified that he or she is the subject of a criminal investigation and receives written notification from the Service that his or her partnership items shall be treated as nonpartnership items. The partnership items of a partner who is notified that he or she is the subject of a criminal investigation shall not be treated as nonpartnership items under this section unless and until such partner receives written notification from the Service of such treatment.

In Phillips v. Commissioner, 272 F.3d 1172, 1176 (9th Cir. 2001), affg. 114 T.C. 115 (2000), the Court of Appeals for the Ninth Circuit (the circuit to which our decision in this case is appealable) found that the mere existence of past criminal investigations does not prove a disabling conflict of interest. Additionally, the court stated that the regulation, read as a whole, vests discretion in the IRS to notify a partner that he or she is under criminal investigation and that, until such notice is given, partnership items remain partnership items. Id. The Court of Appeals distinguished Phillips in River City Ranches #1 Ltd. v. Commissioner, 401 F.3d 1136, 1142 (9th Cir. 2005), affg. in part and revg. on this issue T.C. Memo. 2003-150, stating:

> The lesson of Phillips is that the sole fact of past criminal investigations does not establish a disabling conflict of interest. But there is more to the partnerships' assertion of a disabling conflict than past criminal investigations, and the record before us in this case is not a bare skeleton.

The Court of Appeals for the Ninth Circuit remanded the case for further discovery on whether the TMP in that situation had a

disabling conflict of interest.  However, the current situation is distinguishable from River City Ranches #1 Ltd., primarily because petitioner was not purporting to act as TMP and thus owed no comparable fiduciary duty to other partners.

Petitioner was investigated for violation of internal revenue laws occurring during 1983, 1984, and later.  The partnership items at issue arose during partnership years ended on or before the last day of the latest year for which he was being criminally investigated.  However, there is nothing in the record to show that written notification was ever mailed to petitioner stating that his partnership items would be treated as nonpartnership items.  Additionally, there is nothing to suggest that the criminal investigation of petitioner would have interfered with effective and efficient enforcement of internal revenue laws or would have created a disabling conflict of interest.

Accordingly, the assessments made by the IRS, based on the partnership adjustments, were proper, and the failure of the Appeals officer specifically to address on the merits petitioner's argument as to the conversion of partnership items does not warrant a remand of this case for another hearing.  See Lunsford v. Commissioner, 117 T.C. 183, 189 (2001).

Finally, petitioner contends that, during his criminal investigation, several boxes of his files were seized by the investigators.  He further contends that he and/or his counsel

requested the records and that they were never returned. Petitioner states that DiRicco was in possession of certain of petitioner's records and that DiRicco failed to return those records to petitioner, as they were allegedly stored in a contaminated storage area and could not be recovered. Petitioner contends that the records that he has not recovered would show that Isgro made some contributions to the partnerships on his behalf but without his knowledge and that they would show his percentage interest in the partnerships. Because he was unable to retrieve the records, petitioner argues, he was unable to contact other partners or to intervene in the litigation. Petitioner contends that the failure to return petitioner's records was a violation of his due process rights.

We do not see how any of the records seized by the IRS during its criminal investigation of him are relevant to the adjustments made to the partnerships that affected the assessments against petitioner. Petitioner testified that the documents that were taken were personal in nature and had nothing to do with the partnerships. The documents contained in the record, such as Forms 1040, Schedules K-1, Partner's Share of Income, Credits, Deductions, etc., the notice of intent to levy, and the notice of determination, are more than adequate to decide the issues in this case. Petitioner has failed to show that not being able to access his records constitutes a denial of due process.

- 18 -

Conclusion

Petitioner has offered no credible evidence showing that respondent's determination was arbitrary, capricious, or without sound basis in law.  The Appeals officer verified that applicable law and administrative procedures had been met and determined that the proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of the taxpayer that any collection action be no more intrusive than necessary.  Based upon our review of the relevant evidence and law in this case, we sustain the determination of respondent to proceed with the proposed levy to collect petitioner's unpaid income tax liabilities for 1982, 1983, and 1984.

We have considered the arguments of the parties that were not specifically addressed in this opinion.  Those arguments are either without merit or irrelevant to our decision.

To reflect the foregoing,

Decision will be entered

for respondent.