T.C. Memo. 2013-14

UNITED STATES TAX COURT

SEAN M. TRAINOR, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 26026-09L.          Filed January 15, 2013.

<u>Donald W. MacPherson</u>, for petitioner.

<u>Chris J. Sheldon</u>, for respondent.

MEMORANDUM OPINION

HOLMES, <u>Judge</u>:  Sean Trainor owes about $40,000 in income tax, additions, and interest for 2000.  The Commissioner wants to levy on Trainor's property to pay the tax.  But the government seized gold and silver from Trainor that may well be worth $4 million, which is tied up in an ongoing forfeiture

**[*2]** action. After getting a notice of determination upholding the Commissioner's decision to levy, Trainor proposed as an alternative that collection be put on hold until he gets this booty back.

## Background

Trainor was president and a director of Crowne Gold, Inc. According to Trainor, Crowne Gold was a squeaky-clean small business that allowed its clients to buy, sell, and make payments in gold and other precious metals. According to the U.S. Secret Service, the IRS, and Immigrations and Customs Enforcement, Crowne Gold was an unlicensed business that shady characters used to launder money. Trainor argued that Crowne Gold didn't transmit money, just gold, and that any money transfers between his customers were merely incidental. The government said that Crowne Gold keeps the treasure in one big, disorganized heap and allowed its customers to freely and anonymously exchange rights to their pieces of the pile. By not registering with the state and federal governments as a money-transmitting business, the firm avoided being subject to antimoney-laundering laws designed to alert the authorities to suspicious customer transactions. That's what let Crowne Gold charge fees so far above the market that--at least according to government affidavits--only money launderers and Panamanian Ponzi schemers were willing to pay them.

**[*3]** This case, however, is about the less swashbuckling side of Trainor's business life--his tax bill for 2000. He'd received an extension of his filing deadline until October 2001. He didn't file. The IRS selected him for audit in August 2002, and prepared a substitute for return (SFR) for him a month later.[1] This would usually be the opening salvo in a battle whose next shot would be a notice of deficiency, but in December 2002 the government seized some of Crowne Gold's treasure. This led to a forfeiture proceeding in the U.S. District Court in Oregon. Trainor learned that he was under criminal investigation, and he claims to have handed over his 2000 return to the IRS agent conducting his investigation--he doesn't remember exactly when, and thought it might've been in August 2002, but that it definitely was before December 2003.

In September 2003 Trainor filed a Form 1045, Application for Tentative Refund, for his 2002 tax year. In it he asked that a 2002 net operating loss (NOL) be carried back to his 2000 tax year. The IRS had no record of his 2000 return, so it said no. Trainor finally mailed his 2000 return, dated October 2001, to the IRS in December 2003. The IRS's Atlanta Service Center stamped the return received that

---

[1] When the Commissioner learns--usually from third parties under a duty to report--that a taxpayer has received income but has not filed a return, he can prepare an SFR. See sec. 6020(b). (Unless we say otherwise, all section references are to the Internal Revenue Code in effect at all relevant times. All Rule references are to the Tax Court Rules of Practice and Procedure.)

**[*4]** but, rather than processing it, sent the return to the agent investigating Trainor. Trainor's criminal investigation lingered for a few more years, and the Oregon forfeiture proceeding settled (with Trainor salvaging some of his treasure) in late 2005.

Trainor was understandably upset that the IRS had still not processed his 2000 return--it wasn't until late in August 2006 that the Commissioner finally exhumed Trainor's 2000 return from the criminal-case files and did so--especially since the Commissioner assessed as the tax owed what Trainor himself had reported (except for a small and unexplained extra $170). (Though the Commissioner did tack on an addition for late filing.) Trainor's real problem was that he hadn't paid, and so the Commissioner sent him a final notice of intent to levy to collect this unpaid 2000 tax bill.

Trainor asked for a collection due process (CDP) hearing to contest the underlying liability and to ask for collection alternatives. The hearing began in March 2008, and Trainor at first argued that his 2002 NOLs should offset his 2000 tax liability. The settlement officer put the hearing on hold to look into that issue. Those NOLs proved to be a mirage, however, because Trainor had filed a petition with us to challenge the Commissioner's determination about his tax bill for 2002, and in December 2008 had settled that case by agreeing that he owed a deficiency

[*5] of nearly $40,000.  That meant there were no NOLs from that year to carry back to the 2000 tax year.

A few months after this settlement, the government again raided Trainor and Crowne Gold, and this time seized gold and silver bars and coins that Trainor claims are worth $4 million.  A second forfeiture proceeding was launched, this time in the U.S. District Court for the Middle District of Florida, a proceeding that has been stayed to avoid compromising an ongoing criminal investigation.  That lucre is still in limbo.

Trainor's CDP hearing picked back up in August 2009.  Trainor and the Appeals officer agreed that the NOLs were out of the picture thanks to the settlement of the Tax Court case, but Trainor wanted to propose collection alternatives.  The settlement officer running the hearing asked that Trainor's representative contact him with proposed collection alternatives by September 2009. Trainor didn't respond before the deadline, and in October the settlement officer issued a notice of determination sustaining the proposed levy.

Trainor then sent the Commissioner a letter asking that he reconsider the notice.  He had two reasons.  He first, and understandably, argued that the IRS should have calculated the addition to tax for his late filing of the 2000 tax return using only the time between the due date of his return and the date that he claims

**[\*6]** he turned it in to the criminal investigator--which would have been sometime between August 2002 and December 2003. He also argued, for the first time, that the precious metals should be treated as a deposit against his 2000 tax liability, or maybe as a payment, and that the Commissioner should therefore wait to levy until the resolution of the Florida forfeiture proceeding.

The Commissioner never replied to Trainor's letter.

Trainor then filed a timely petition with this Court. He initially argued that the Commissioner overassessed his tax--both reiterating his claim about his 2002 NOL carryback, and demanding credit for filing his return before December 2003 with the criminal investigator. (He later conceded the first issue.) Trainor also claimed that the Commissioner abused his discretion when he determined to proceed with collection while the government continues to hold what he claims is his $4 million treasure.

Trainor was a Florida resident when he filed his petition, but he asked that we put the case on a Phoenix trial calendar. The parties both moved for summary judgment, but then agreed to submit the case for decision under Rule 122.

## Discussion

The Commissioner may levy on property belonging to a taxpayer once he gives proper notice and an opportunity for a CDP hearing. <u>See</u> secs. 6330 and

[*7] 6331. A taxpayer can challenge his underlying tax liability at that hearing only if he did not receive a notice of deficiency or did not otherwise have a chance to contest his liability. See sec. 6330(c)(2)(B). A taxpayer can also raise any relevant issue relating to the unpaid tax or proposed collection action, including challenges to the appropriateness of collection and suggestions of alternatives to collection by levy. See sec. 6330(c)(2)(A).

I.      The Liability

We review *de novo* any determination of a taxpayer's liability. Sego v. Commissioner, 114 T.C. 604, 609-10 (2000). (Trainor gets to challenge his tax liability because the IRS accepted his return and never sent him a notice of deficiency. See Montgomery v. Commissioner, 122 T.C. 1, 8 (2004).) The only liability issue left here is how much of an addition to tax Trainor owes under section 6651(a)(1) for failure to timely file his 2000 tax return. He had asked for an extension, which means the return was due on October 15, 2001. The addition to tax for failure to timely file a return is added on at a rate of 5% of the net amount of tax due for each month after the return's due date, but the Code caps it at 25%. Trainor reasonably argues that the Commissioner should have calculated the addition from the date that Trainor handed his 2000 return to the IRS agent who conducted the IRS's criminal investigation. The Commissioner instead

**[*8]** calculated it based on the day the post office postmarked the return in December 2003.

Trainor doesn't know exactly when he handed his return to the investigator. Nor do we. But Trainor's guess as to the earliest possible date is August 2002, the date of an entry in the IRS's transcripts that the Commissioner says meant only that he had begun the audit. The Commissioner may well be right about this, but let's assume for the sake of argument that he isn't. This best-case scenario for Trainor would have us find that he filed his 2000 return only ten months late. The addition to tax for a tardy tax return maxes out after five months, however, so we would still have to find Trainor liable for the entire failure-to-timely-file addition that the Commissioner wants.

II.    The Hoard

The Appeals officer's decision to forge ahead with collection is a nonliability issue. We look at the settlement officer's nonliability decisions for an abuse of discretion. Sego, 114 T.C. at 610. A decisionmaker abuses his discretion "when [he] makes an error of law, * * * or rests [his] determination on a clearly erroneous finding of fact, * * * [or] 'applies the correct law to facts which are not clearly erroneous but rules in an irrational manner.'" United States v. Sherburne,

**[\*9]** 249 F.3d 1121, 1125-26 (9th Cir. 2001) (citations and internal quotation marks

omitted); see also Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 402 (1990).

One thing a taxpayer can do at a CDP hearing is suggest collection

alternatives.  Sec. 6330(c)(2)(A)(iii).  The Commissioner has discretion to accept or

reject them, as long as he considers all of the relevant facts and circumstances.  Sec.

301.7122-1(c), Proced. & Admin. Regs.  Trainor's suggested alternative is that the

Commissioner wait to collect until the Middle District of Florida decides the fate of

his treasure; or, alternatively, that he treat the gold and silver held by the

government as a deposit or payment toward his tax bill.

The problem for Trainor here is that he didn't make these points during his

CDP hearing.  And while it is true that we can consider *evidence* that's not in the

administrative record, see Robinette v. Commissioner, 123 T.C. 85, 101 (2004),

rev'd, 439 F.3d 455 (8th Cir. 2006),[2] we generally can't consider a section

---

[2] But see Keller v. Commissioner, 568 F.3d 710, 718 (9th Cir. 2009), aff'g
T.C. Memo. 2006-166, aff'g and vacating on another ground decisions in related
cases; Murphy v. Commissioner, 469 F.3d 27, 31 (1st Cir. 2006) (scope of review
of CDP determinations limited to administrative record), aff'g 125 T.C. 301 (2005).
This case, however, would be appealable to the Eleventh Circuit, which has not
considered the question.

**[\*10]** 6330(c)(2) *issue* that a taxpayer doesn't first raise at his hearing, <u>see</u> <u>Giamelli v. Commissioner</u>, 129 T.C. 107, 112-13 (2007).

Trainor couldn't have brought up the raid--which didn't happen until February 2009--when his CDP hearing began in early 2008. But that hearing was delayed while the NOL issue played out. Trainor's representative did state that his client was interested in collection alternatives when the CDP hearing picked back up in August 2009, but the Appeals officer gave Trainor about two weeks to contact him with proposals, and Trainor never did. And the officer didn't issue the notice of determination sustaining the proposed levy until several weeks after that. Yet the first time Trainor said anything about the raid was in a letter to Appeals that he sent 27 days after Appeals had issued the notice of determination, in which he asked Appeals to withdraw the notice and consider his new offer.

The Commissioner considers this a new issue, and even objects to the introduction of Trainor's request for reconsideration on the ground that it's irrelevant to the question of whether the settlement officer abused his discretion. We agree. If a taxpayer doesn't raise an issue, we can't fault the settlement officer for not considering it. <u>See</u> <u>Giamelli</u>, 129 T.C. at 113. And Trainor had ample opportunity to present collection alternatives--he had over two years to come up with at least one between the levy notice and the end of his hearing--but he failed

**[*11]** to produce any by the time the entirely reasonably deadline that the settlement officer imposed finally expired in September 2009.  We thus hold that the Appeals officer did not abuse his discretion in determining to proceed with the levy.

Trainor alternatively asks us to remand his case to Appeals so that they can consider his argument about the treasure.  Sometimes we can remand a CDP case to Appeals even without an abuse of discretion if "we consider a rehearing 'necessary or productive.'" Churchill v. Commissioner, T.C. Memo. 2011-182, 2011 WL 3300235, at *5 (quoting Martin v. Commissioner, T.C. Memo. 2003-288, aff'd, 436 F.3d 1216 (10th Cir. 2006)).  We've found that to be the case where the law changed in an important way or where there was a material factual change in circumstances between the CDP hearing and the trial.  See id. (citing Harrell v. Commissioner, T.C. Memo. 2003-271).  Neither of those is true here.  Trainor's CDP hearing began in 2008, and continued into August 2009.  The government had seized the hoard in February 2009, which means that Trainor had six months after the raid to bring it to the Appeals officer's attention.  Trainor should've raised this issue during his hearing.

Trainor also argues that Appeals abused its discretion by not responding to his letter requesting reconsideration of the notice of determination.  The Internal

**[\*12]** Revenue Manual (IRM) tells Appeals employees not to hold further hearings with taxpayers after they issue a notice of determination. Id. pt. 8.22.2.2.22(1) (Oct. 30, 2007). It also instructs Appeals not to consider collection alternatives after the petition is filed with us when the taxpayer failed to present the offer or provide requested financial information during the CDP hearing. Id. pt. 8.22.2.3.2(3) (Mar. 11, 2009). Appeals officers can consider new issues during the CDP hearing, but only up until they issue a notice of determination. Id. pt. 8.22.2.2.16.4.2(3)(b). Appeals may reconsider its determination if there has been a change in circumstances, but officers "may consider only those issues that were raised and considered at the previous hearing." Id. pt. 5.1.9.3.12(3) (Jan. 1, 2007). Subsequent editions of the IRM have made the post-determination cutoff even more explicit.[3] The IRM doesn't bind us, see, e.g., Fargo v. Commissioner, 447 F.3d 706, 713 (9th Cir. 2006) (citing cases from five other circuits), aff'g T.C.

---

[3] The latest version states that Appeals officers "do not need to consider information submitted after the determination or decision is issued" in a CDP case. IRM pt. 8.22.9.13(2) (Mar. 29, 2012). Nor can Appeals amend a notice of determination unless the notice contains a clear error, the taxpayer has not yet petitioned the Tax Court for review, and the correction can be made before the 30-day period to petition the Tax Court closes. Id. pt. 8.22.9.15. The Commissioner may ask Appeals to consider new issues if the taxpayer's circumstances have changed since the CDP hearing, or if the taxpayer failed to respond to Appeals during the CDP hearing due to illness or travel but now is offering a viable collection alternative which would resolve the case. See id. pts. 8.22.9.19(3), 5.1.9.3.11.1(1) (Feb. 23, 2012).

**[*13]** Memo. 2004-13; <u>Vallone v. Commissioner</u>, 88 T.C. 794, 807-08 (1987) ("I.R.M. requirements are necessarily merely directory and not mandatory and noncompliance does not render the action of the [Commissioner] invalid"), but we can't create new procedures for the IRS on our own, <u>see</u> <u>Vt. Yankee Nuclear Power Corp. v. Natural Res. Def. Council, Inc.</u>, 435 U.S. 519, 524 (1978). If a procedure isn't required by the Administrative Procedure Act or another statute, a court can't force the agency to adopt it. <u>See</u> <u>id.</u>; <u>see also</u> <u>Pension Benefit Guar. Corp. v. LTV Corp.</u>, 496 U.S. 633, 654 (1990). And with no requirement in the Code or other statute--or even in the IRM--that Appeals consider information submitted after its determination is issued, we are not at liberty to invent one.

We also have to express our doubt that the seizure would be a compelling reason for the Commissioner to wait to collect. It's not clear if or when Trainor will ever get this property back, and if it is forfeited, it can't count towards payment of his tax liability. <u>See</u> <u>McCorkle v. Commissioner</u>, 124 T.C. 56, 66 (2005).

<u>Decision will be entered for</u>

<u>respondent</u>.